JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App. R. 11.1(E) and Loc. R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct. R.Rep.Op. 3(A).
The defendant-appellant, Lamon Akemon, challenges the trial court's denial of his presentence motion to withdraw his guilty plea to two counts of a four-count indictment. All four counts involved first-degree-felony drug offenses with major-drug-offender specifications. The guilty plea was part of a plea bargain in which Akemon was initially to plead guilty to the two counts and face concurrent mandatory ten-year prison terms; however, it was understood that if he appeared at sentencing and cooperated with the police, the trial court would permit him to withdraw his original plea and to plead guilty to a new combination of lesser charges that would have resulted only in an eight-year prison term.
The plea bargain fell apart, however, when Akemon moved to withdraw his plea prior to sentencing. Rather than having a belated change of heart, Akemon claimed that he had consistently maintained his innocence and would not have entered into the plea bargain were it not for the pressure exerted on him by his attorneys. His attorneys supported the motion by informing the court that they had, indeed, put pressure on Akemon to agree to the deal, but they also explained that they had done so because, in their view, the evidence against him was such that a plea bargain was in his best interest. Although supportive of his motion, the attorneys made clear that they still felt that it was in his best interest to accept the plea bargain. Both attorneys suggested that Akemon's acceptance of the plea bargain centered on his expectation that if he cooperated successfully with the Regional Narcotics Unit (RENU), he would have been able to reduce his eventual prison time to less than eight years. They indicated that Akemon's expectation in this regard was frustrated when RENU agents broke off communications with him after two meetings.
Also, as part of his motion to withdraw his plea, Akemon proffered that he had submitted to a polygraph test with a reputable polygraph examiner, and that he had "passed" the test. Although acknowledging that the polygraph results were inadmissible at trial, Akemon argued that they demonstrated that he had a meritorious defense.
The state vigorously opposed allowing Akemon to withdraw his plea. The state argued that its case against Akemon would be substantially prejudiced if the motion were granted. The state's key witness, Dondi Andersen, another drug dealer who had implicated Akemon, had since pleaded guilty to state charges and had already entered the federal prison system on federal charges. The state argued that it had thus lost its leverage over Andersen to testify against Akemon. The prosecutor stated, "It's going to be very hard for the state to try to talk him [Andersen] into cooperating with the state when there is nothing we can do for him at this time." The state further contended that Akemon had strategically waited to move to withdraw his plea until after Andersen had been effectively removed as a witness against him, a tactic made possible by the fact that Akemon had been informed in discovery when Andersen would plead guilty to the state charges.
Jospeh Lee, a RENU agent, testified at the hearing on Akemon's motion, outlining the state's case against Akemon and Andersen's role in it. After RENU agents had arrested Andersen with cocaine, Lee testified, Andersen had told agents that the cocaine had been purchased from Akemon. Andersen was then wired with a microphone and sent to meet with Akemon. According to Lee, during their conversation, Andersen gave Akemon $11,500 in marked funds, representing an amount that Andersen owed Akemon for a previous purchase of cocaine. Lee testified that the words "kilo" or "kilos" occurred often during the conversation, and that Akemon had arranged to sell Andersen two more kilograms of cocaine. Akemon was arrested immediately afterward. In a subsequent police interview, Akemon claimed that the money that changed hands was for a previous loan that did not involve drugs.
Lee testified that Akemon had indicated during the original plea negotiations that he might have been able to help RENU agents capture a fugitive narcotics dealer, Charles Bea. Lee stated that he indicated to Akemon that if his information proved useful, RENU agents might have been willing to "entertain giving him further consideration beyond the eight-year agreed plea." But, Lee testified, after Andersen had pleaded guilty to state charges, Akemon proved unwilling or unable to provide any information or to do anything to assist RENU agents in tracking down Bea. Later, Lee testified, Akemon "started talking about his case again," indicating that he and Andersen had not been discussing cocaine in their taped conversation, but had been referring to marijuana. According to Lee, Akemon still did not provide him with any useful information or cooperation, and finally he gave up trying to solicit either.
The trial court, announcing its decision, fully agreed with the state that the effect of granting the motion would be to seriously damage the state's case against Akemon. The court noted that it had reviewed "everything that's been presented" and concluded that the "essence" or "backbone" of the case was Andersen's testimony. The court further indicated that it accepted the state's argument that it was questionable whether Andersen would agree to testify against Akemon, having lost all incentive from a legal standpoint. The court stated, "And if, in fact, [Andersen] is brought back at this time, and doesn't testify, then [Akemon] has used the system to his benefit and to the detriment of justice, and that's not going to happen in this court."
As this court has noted, although a trial court should liberally consider a motion to withdraw a plea prior to sentencing, a defendant does not have an absolute right to have his motion granted. State v. Jefferson (Aug. 15, 2003), 1st Dist. No. C-020802. In order to overturn the trial court's decision, a reviewing court must conclude that the trial court abused its discretion. Id. "In determining whether the trial court has properly exercised its discretion in denying a Crim. R. 32.1 motion, the appellate court should consider a number of factors, including the following: (1) whether the defendant was represented by highly competent counsel; (2) whether the defendant was afforded a complete Crim. R. 11 hearing before entering the plea; (3) whether the trial court conducted a full and impartial hearing on the motion to withdraw the plea; (4) whether the trial court gave full and fair consideration to the motion; (5) whether the motion was made within a reasonable time; (6) whether the motion set out specific reasons for the withdrawal; (7) whether the defendant understood the nature of the charges and the possible penalties; (8) whether the defendant was possibly not guilty of the charges or had a complete defense to the charges; and (9) whether the state would have been prejudiced by the withdrawal." Id., citing State v. Fish
(1995), 104 Ohio App.3d 236, 240, 661 N.E.2d 788; see, also,State v. Xie (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715.
None of these factors weigh in favor of overturning the trial court's decision in this case. Akemon, who was represented by highly competent counsel, struck a plea bargain very strongly in his favor given the evidence against him. He was afforded a complete Crim. R. 11 hearing, as well as a full and impartial hearing on his motion to withdraw the plea. The trial court appears to have given full and fair consideration to the motion, assuring itself that Akemon had understood at the time of entering the plea the nature of the charges and the possible penalties. Further, the trial court gave consideration to the possibility that Akemon was not guilty of the charges, but found that possibility unimpressive, particularly when compared to the prejudice that the state would suffer due to the loss of any leverage it might have otherwise had over Andersen after he had pleaded guilty to the state charges. As noted, the trial court strongly implied that it was in agreement with the state that Akemon's decision to withdraw his plea was motivated by his awareness that Andersen had lost whatever legal incentive he may have had to testify against him.
Akemon argues, in this regard, that the state's theory of prejudice is not persuasive because of the state's position that it never offered Andersen any promises or guarantees of consideration for his testimony. But this argument ignores the testimony of Lee that Andersen, though given no promises or guarantees pursuant to office policy, was still very much aware that there was reason to believe that his cooperation would work to his legal advantage. Lee testified that he was under the impression that Andersen, with whom he had several conversations, had a strong "hope" that the state would give him a "break" should his testimony prove useful in convicting Akemon. He also testified that it was after Andersen refused to talk to Akemon's attorney on the morning of Akemon's trial that Akemon agreed to enter a plea.
As for Akemon's claim of innocence, we note, as did the trial court, that the results of the polygraph examination would not have been admissible at trial. Further, Lee's testimony that Akemon tried to convince him that his conversation with Andersen was about marijuana, not cocaine, casts a considerable cloud upon his credibility since he originally claimed that the conversation did not involve drugs but was about an old loan. We also note that Lee's testimony corroborated the view of counsel representing Akemon that the evidence against him on the original four counts weighed strongly in favor of accepting a plea bargain.
Finally, Akemon argues that the trial court breached the plea agreement by sentencing him to ten years in prison rather than eight. But it is clear from the record that the trial court was willing to let Akemon withdraw his plea in order to enter a new plea to reduced charges that would have allowed him to receive an eight-year prison term, but that Akemon was simply unwilling to enter a new guilty plea, having taken the position that he was innocent of all the charges. Indeed, at times the tone of the trial court was almost beseeching at it attempted to implement the original agreement, only to be frustrated by Akemon's intransigence. It should be pointed out, also, that the trial court was still willing to give Akemon an eight-year prison term on reduced charges even though, according to Lee, his cooperation had proved to be largely useless. Thus, any failure to execute that part of the original plea bargain that would have resulted in an eight-year rather than a ten-year prison term was entirely of Akemon's own doing.
Accordingly, Akemon's two assignments of error are overruled, and the judgment of the trial court affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App. R. 27. Costs shall be taxed under App. R. 24.
Doan, P.J., Hilderbrandt and Gorman, JJ.